## Richmond

## EDGEFIELD APARTMENTS AND CHURCHLAND SQUARE APARTMENTS V. CITY OF PORTSMOUTH

November 23, 1977.

Record No. 761293.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*J.S. Livesay, Jr., Howard E. Gordon (Schlitz, Levy & Livesay, Ltd.; Hofheimer, Nusbaum & McPhaul,* on brief), for appellants.

*Gordon B. Tayloe, Jr., City Attorney (James T. Martin, Assistant City Attorney,* on brief), for appellee.

Per Curiam.

Edgefield Apartments and Churchland Square Apartments sought declaratory judgments of the correct utility taxes assessable against them by the City of Portsmouth pursuant to the City's Utility Services Tax.[1] Edgefield and Churchland own apartment complexes in Portsmouth containing 176 and 150 separate family living units, respectively. The causes were consolidated, and the trial court held that in each instance the "separate family living units" constitute "residential units", and that the tax on gas and electric service should be levied in accordance with § 35-122 of the Portsmouth City Code.

The authority of a city to impose a consumer's tax on gas and electric service is not questioned. Specifically in issue here, in addition to § 35-113 which defines "residential use", are §§ 35-114 [2] and 35-122.[3] Section 35-114 imposes a 20% tax upon

[1] All code section references in this opinion are to the Portsmouth City Code, Article VII, Utility Services Tax.

[2] "Sec. 35-114. **Amount of levy; payment.**

"Subject to the limitations set forth in section 35-122, there is hereby imposed and levied by the city, for the purposes hereinafter stated, upon each purchaser of any utility service, a tax upon the charge made by the seller against the purchaser with respect to each purchase of utility service, exclusive of any federal tax thereon, in the amount of twenty (20) per cent on the first one thousand dollars ($1,000.00) of such charge made or incurred during any monthly period, which tax, in every case, shall be collected by the seller from the purchaser and shall be paid by the purchaser to the seller for the use of the city at the time that the purchase price or such charge shall become due and payable. . . ."

[3] "Sec. 35-122. **Exclusions.**

"(a) *Gas.* There is excluded from the tax imposed by this article so much of the charge, exclusive of any federal tax thereon, made by the seller against the purchaser for gas service for residential use as is in excess of nine dollars ($9.00) for any month, or part thereof; . . .

"(b) *Electricity.* There is excluded, subject to the exceptions set forth in this subsection, from the tax imposed by this article, so much of the charge, exclusive of any federal tax thereon, made by the seller against the purchaser for electricity service for residential use as is in excess of seventeen dollars ($17.00) for any single-family residential unit served by a single meter for any month, or part thereof; . . ."

each purchaser of any utility service on the first $1,000 of the charge made for the service during any monthly period. A maximum tax of $200 per month is intended. However, the section incorporates by reference § 35-122, and the taxes imposed are levied "subject to the limitation set forth in section 35-122".

Section 35-122, titled "Exclusions", provides for a limitation of the $200 maximum tax imposed under § 35-114 by limiting the levy for residential users to 20% of the first $9 paid by the consumer to the utility server for gas, or a maximum monthly tax of $1.80, and 20% of the first $17 paid each month by the consumer to the utility server for electricity, or a maximum monthly tax of $3.40.

Subsections (a) and (b) of § 35-122 further state:

". . . provided, however, that where more than one single-family residential unit is served by one meter, in computing the maximum amount of such charge subject to tax, such sum of . . . [$9.00 for gas and $17.00 for electricity] . . . shall be multiplied by the number of single-family residential units served by each meter; . . ."

Edgefield and Churchland contend that their apartment buildings, each serviced by a master meter, occupy exactly the same position as shopping centers, office buildings and factories and are subject to the tax imposed and levied by § 35-114, and with a maximum tax of $200 per month for each type of utility service. They point to the language of § 35-113 which defines "residential use" as meaning ". . . any utility service used by the owner or the tenant of private residential property or the tenant of an apartment who is billed for and pays directly the charge for such utility service in or for such property". Admittedly, tenants renting from Edgefield and Churchland are neither billed nor pay directly for either gas or electricity.

The City of Portsmouth argues that it has reasonably classified purchasers of gas and electricity in three categories: (1) Owners of apartment complexes consisting of a number of single-family residential units served by one meter ($1.80 for gas, $3.40 for electricity, a month, respectively, multiplied by the number of units); (2) Owners and tenants of private residential property and tenants of apartments served by separate meters (20% of the charge for gas and electricity but not exceeding $1.80

and $3.40 a month, respectively); (3) All other purchasers of any utility service (20% on the first $1,000 charged, or a maximum of $200 a month).

The City says it can be assumed that in determining the rental for their residential apartments the appellants consider the cost of the utilities furnished its tenants, and that indirectly the tenants are paying for these utilities by their rental payments. It points out that absent the provisions of § 35-122(a) and (b), the $200 per month tax on gas and electricity prorated among Edgefield's tenants would amount to only $1.30 per month for each utility service, while consumers in apartments served by individual meters would pay not exceeding $1.80 utility tax for gas and not exceeding $3.40 utility tax for electricity.

While we agree that it may have been the intent of the council of the City of Portsmouth, when it enacted the City's Utility Services Tax, to classify utility users in the three categories outlined, the ordinances enacted by the council failed to accomplish that object.

Section 35-114 imposes the utility tax upon *each purchaser* of any utility service, not upon each user. Section 35-113 provides that the word purchaser "shall be taken to include every person who purchases a utility service".

Section 35-122, however, limits the levy made under § 35-114 to those who are purchasers of utility service for "residential use". We must therefore turn again to § 35-113 for the City's definition of residential use.

That portion of the ordinance defining residential use, § 35-113, is clear and unambiguous. It establishes two categories of residential use of utility service. One is by "the owner or the tenant of private residential property". The other is by "the tenant of an apartment who is billed for and pays directly the charge for utility service". Edgefield and Churchland fit neither category and neither do the tenants to whom appellants rent apartments.

Appellants are therefore not subject to the limitations for residential users provided for in § 35-122 and, as to them, the tax on gas and electric service should be levied by the City of Portsmouth in accordance with the provisions of its Code § 35-114.

Accordingly, the order of the lower court is reversed and the causes are remanded for such further proceedings as may be indicated consistent with the views expressed in this opinion.

*Reversed and remanded.*